Good morning. Christopher Stender on behalf of the petitioner Lawrence Eneh. I'm appearing as pro bono counsel for him, and I'd like to reserve two minutes of my time for rebuttal. This is an immigration case where both the immigration judge and the Board of Immigration Appeals denied the petitioner protection under the Convention Against Torture. When the case was before the immigration judge, the immigration judge found that the petitioner was credible. He found that Nigerians ostracized those that have HIV and AIDS, and he also found that there was no doubt that the petitioner's medication, which he was taking about 14 different medications at the time, would be lacking if he was removed from the United States and sent to Nigeria. However, he denied with – he found that withholding medication would not be done at the instigation or consent or acquiescence of a public official who has custody or control of the petitioner. When the case went on appeal to the Board of Immigration Appeals, the BIA actually found a little bit differently. They found that there was no evidence that the petitioner will be detained and tortured in Nigeria due to his drug trafficking conviction and had no discussion whatsoever regarding the withholding of medication because of his HIV-AIDS condition. There are two ways that the petitioner can prevail on his – on his claim. First, he can show that public officials acting in their official capacities will be more likely than not to actually inflict or instigate harm. I think that's more of a restrictive standard. Secondly, the broader standard is he could show that public officials acting in their official capacities will more likely than not have – more likely than not have awareness of the torturous actions of private individuals or public officials acting in their personal capacities and breach their responsibilities to intervene to prevent those actions. So what's the best evidence you have in the record that likelihood of torture once your petition – if the petitioner returns to Nigeria? I think we have extremely strong evidence, and it's something that the Board of Immigration Appeals completely ignores, and that's in the record at page 360. The U.S. Department of State Country Conditions Report that are submitted in the record under the Torture Act says that prison officials, police, and security forces often denied medical treatment and, importantly, withheld it as a form of punishment. This is not discussed by the immigration judge. It's ignored. And the BIA goes even farther and said that there is no evidence, when that's clearly not true. Our own U.S. Department of State found that medical treatment is withheld to prisoners. Also, those same country reports at page 361 find that the police and security forces used arbitrary arrest and detention within the country of Nigeria. So I think there is very strong evidence that if the petitioner, Mr. Ine, is sent back to Nigeria, that he would not only be detained, but as a form of punishment that his medication could be withheld, given his condition, and the immigration judge accepted all the medical conditions because we submitted a lot of corroboration. There's a lot of documents that the gentleman is actually extremely ill and likely to die if he's not able to take his medication. So should he be returned to Nigeria, it's likely that this would not only be just a deportation, but likely a death sentence for the petitioner. His claim fits the definition of torture because he would suffer the intentional infliction of pain and suffering by the Nigerian prison authorities by the purposeful withholding of his AIDS medication. This is certainly sufficient awareness, and there'd be a failure to act or on anybody to intervene to stop it. As I've already mentioned, the country condition reports continue to support, including the newest ones, that Nigerian prisoners are tortured by prison officials through the intentional and annoying withholding of medication. That has not changed. This Court recently in Aguilar-Ramos v. Holder, it's a citation that I submitted today, found that if there is evidence in the record that suggests that gangs and death squads operate in El Salvador, and that its government is aware and willfully blind to their existence, that the matter should be remanded to the immigration judge for further fact-finding. I think this case clearly is ripe for a remand to the immigration judge for further fact-finding. I think the record is clouded as exactly what the BIA did in this manner. It seems to adopt the immigration judge position, and he found strictly on the acquiescence issue. He seemed to assume that he would be detained and found him credible. The BIA changes it and finds that there is no evidence that he would be detained or that the medication would be withheld. It's certainly belied by what's in the record, which is the country condition report that was submitted with his case. How do you distinguish Villegas? Villegas is a case decided, it's the Mexican officials and the... With the mental health facilities? Yes. Yeah. Well, quite clearly, I think that is a question of negligence, where in Mexico they had very, it's a poor country, they had poor facilities, poor mental health facilities. That was all proven in the record, but there was no intentional act, no volitional intentional act. Here, the country condition reports themselves say that the withholding of medication is a purposeful act done as a form of torture, a form of punishment. So I think it's clearly distinguishable from the Villegas case. Okay. I think we have your argument at hand. Any questions? Thank you. You can reserve your time for rebuttal. I will. Thank you. We'll hear from the government. Good morning. Cynthia Parsons for the government. The Petitioner did not meet his burden, and the BIA and the immigration judge ruled correctly that substantial evidence supports a decision to deny the deferral under the Convention Against Torture. As this Court just noted, the Villegas case actually is markedly similar to this case. Contrary to Petitioner's arguments, in the record in Villegas it showed not only that the Mexican mental health facilities were gross and deplorable, but that the Mexican government knew that people were in those, were sent to those mental health facilities who should not have been there. And, in fact, the Court noted, this Court noted that people in those facilities were abused, that they were chained to beds to the point that their limbs became so dysfunctional they had to be amputated. Clearly, if the Mexican government in Villegas was aware that mental patients or patients were being sent to these facilities who should not have been there and those conditions existed, then they were aware, as Petitioner's counsel has said, of those conditions. But is there any record that they had a particular animus against mental patients? No. And, actually, that is one of the important holdings of Villegas, is that to constitute torture, the Petitioner has to show not only likelihood of torture, but that that would be, to constitute torture, it has to be specifically intended to torture. But isn't it clear that in Nigeria the society does have an animus against people with AIDS? They say that the AIDS people have come back to infect the society. There is a, there has been a pervasive anti-AIDS and anti-homosexual opinion in Nigeria. However, if the court would look at the record, the government of Nigeria, since 1999, and particularly from 2000 on, has taken significant steps to end ostracization. They have enacted a law barring discrimination against people with AIDS. They have begun significant public awareness policies regarding AIDS and to prevent ostracization. President Clinton himself complimented the Nigerian government for acknowledging that AIDS should not be stigmatized and that it cannot be denied. These are all, this is all evidence that is in the various country reports and Nigerian reports that are in the record. So the fact that an American president scolds them is scarcely proof that they're doing a good job themselves. Actually, the American president complimented them, complimented the newly elected president of Nigeria for his efforts to end ostracization and stigmatization of people with AIDS. Therefore, there is substantial evidence showing that the government has taken steps to end the ostracization and the stigmatization of people with AIDS. Moreover, did they specifically refer to? Yes. No, they did not. Well, they didn't deal with the issue, did they? They dealt with the issue by finding that substantial evidence supported that there was no, that there wasn't substantial evidence to show torture. Well, actually, what they said, which is a little bit odd, is that there's no evidence in the record. They said there were, I'm sorry. Well, there's, and I realize one can read that sentence perhaps in two ways, but there was evidence in the record. You've heard Petitioner recite to it today. It seems to be a misstatement on the part of the BIA, or else they overlooked it. What the government believes the BIA said is that there was no evidence in the record that he would be automatically detained upon return. And. Well, he testified to that effect. Well, looking. I'm sorry. And then the IJ did not find him incredible. No, the IJ did find that he testified credibly. However, testifying credibly is only part of the equation. As this Court acknowledged in Nauru, citing Talata, once the Court finds that an alien has testified credibly, those facts are accepted as true. The next question is, do the facts that he testified to give rise to a claim for relief? That is where it fails. No, I understand all that, but the BIA is not presenting the case in the way that you are, the BIA, so there's no evidence in the record at all. And that's just not true. The BIA said that there was no evidence in the record that he would automatically be detained.  But also found that there was insufficient evidence to establish torture, and they affirmed the decision of the immigration judge. And looking specifically at what the Petitioner testified to, he testified when the judge asked him how did he know he was going to be detained, and he said at page 93 of the record, people in Nigeria think AIDS are the patient's fault and, therefore, they're ostracized. That the Federal Government does not budget enough money and doesn't have the medications, and that Valley Fever is something that they don't even have over there, so there's no meds for that. And, therefore, that is what he was basing his opinion on, or his testimony on, that he would be deprived of medicine. Regarding the detention ---- Well, how do you deal with the country reports that indicate that sometimes withholding medication is done as a form of punishment in prison? Assuming, for the sake of this argument right now, that that would constitute torture, just for a moment, I would like to comment on that further, however, just assuming that right now, that's only part of that equation, that part of the analysis of torture. If there is punishment based on one of the prescribed purpose, that's only one part. Then you have to determine if the country or the government, the officials, once they are aware of it, failed to act to intervene. And in this case, there is ample evidence in the record that the government has acted to intervene. First, in response to the finding about the prison conditions, if you would look at page 361 of the record, the Minister of Justice created a commission to address the problems in the prisons and invited the human rights commission to work with this commission to address it. They have allowed access by the Red Cross and other human rights organizations. And in fact, at page 372, the report notes that domestic and international human rights groups are allowed to operate virtually unrestricted. So they did. This was a new government that came in, in 1999. They came in, they said, yeah, the prior government didn't do a good job, things are bad. They started taking efforts, making efforts to address that. One of them was the Minister of Justice forming a commission to deal with the prison conditions. So the second half of that equation isn't there. They did not just simply ---- But to eliminate the problem doesn't mean the problem has been eliminated, though. No, but what the law requires is that they intervene to try to stop. It doesn't require them to eliminate all problems 100 percent. What the petitioner has to show specifically is that Nigeria has either created or allowed to occur these conditions, both the lack of medication and the prison conditions, for the specific intent of torturing. That evidence simply is not in the record. I know your time is running out, and I want you to be able to address one issue, which is, and you alluded to it before, why don't you think withholding of medication as punishment constitutes torture? The record, the statement that's in the country reports said that they would withhold medication as punishment. The problem is what a bunch of the other evidence, including the evidence that the petitioner cites, shows that there is very little medication available. In fact, at one point, he says that it's only palliative. I'm not quibbling on the factual record.   Would you concede that if one is withholding medication, needed medication for punishment, that that can constitute torture within the meaning of the INA? Would I concede that it can? Yes, I will concede that it can. However, for example, to use the hypothetical further. I understand your position is that under the circumstances in this case, it doesn't. But I thought I heard you say that it never. Well, no. No, you're right. If I if I said that, I did not mean to say that or imply it. What I was what I meant to say was that, for example, if the only medicine that's available is Tylenol, say they're in a ward where everybody's happy and healthy and they say, well, because you didn't need your lettuce today, you can't have Tylenol. Is that torture? Well, no. Of course not. But in this case. But he's making a different claim. He said he's going to die if he doesn't get this medicine. He says yes. And medicine is being withheld as punishment. I mean, that's his claim. The medicine that's being withheld, according to him, of the only meds that are available is basically palliative medication or aspirin. I am sorry. I am out of time. All right. Any further questions? Okay. Thank you very much. We'll hear rebuttal. I actually don't have any further rebuttal, having heard the government's argument. But if there are any further questions, I can try to answer them. All right. Any further questions? Okay. Thank you very much for your argument. The case just heard will be submitted for decision. Thank you both for your argument and presentation.
judges: Hall, Noonan, Thomas